**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Christopher LEDDINGTON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 24, 2006.

Filed Sept. 12, 2006.

Christa L. Schott, Doylestown, for appellant.

Diane E. Gibbons and Daniel M. Keane, Asst. Dist. Attys., Doylestown, for Com., appellee.

BEFORE: HUDOCK, STEVENS and TAMILIA, JJ.

## OPINION BY TAMILIA, J.:

¶ 1 Christopher Leddington appeals from the August 17, 2005, amended judgment of sentence of 18 to 36 months imprisonment imposed as a result of his guilty plea, on January 7, 2002, to indecent assault[1] and corruption of minors.[2] The charges arose in connection with appellant's alleged sexual assault upon an eleven-year-old, female family friend. Included in the amended judgment of sentence was a determination that appellant was a sexually violent predator (SVP).

¶ 2 Appellant originally was sentenced on May 6, 2002, but that sentence included only the 18 to 36 month term of imprisonment, the Commonwealth's request for a hearing to determine whether appellant was an SVP having been denied due to then current constitutional challenges to Megan's Law. The challenges ultimately were resolved in the Commonwealth's favor on March 23, 2004, and, upon remand, the Commonwealth successfully petitioned for a hearing on appellant's status as an SVP. *See* Record, No. 22, Order; No. 23, Order. At the May 25, 2005, hearing on the motion, the trial court determined the Commonwealth had satisfied its burden by clear and convincing evidence, and by Order entered August 17, 2005, appellant's judgment of sentence was amended to include appellant's classification as an SVP pursuant to Megan's Law.[3] That portion of the May 6, 2002, judgment of sentence imposing 18 to 36 months imprisonment, plus five years probation, appears to have remained intact. Post-sentence motions were denied by Order entered December 19, 2005, and this appeal followed. A recitation of the facts underlying this appeal follows.

¶ 3 On March 5, 2001, police in Bucks County were summoned to the home of the victim and were informed that appellant, a friend of the family, had sexually assaulted their daughter known herein as "J.W." Record, No. 11, Investigation Report. J.W. told police that last year, following

1. 18 Pa.C.S.A. § 3126(a)(7).

2. *Id.* § 6301(a).

3. 42 Pa.C.S.A. §§ 9791–9799.7.

her birthday party, she had fallen asleep lying next to the appellant and had awakened to discover appellant touching her genital area and legs over top of her pajamas and sucking on her fingers. *Id.* She also told police appellant had threatened to kill her if she reported the incident. *Id.* These statements were corroborated by a friend of J.W.'s who also slept at the victim's home on the night of the assault. *Id.* J.W. further explained to police that she had waited to come forward because she feared the appellant, and had come forward now, one year later, because the passing of another birthday had revived memories of the incident. *Id.*

¶ 4 On August 14, 2001, appellant reported to police headquarters for questioning and provided police with a written statement in which he admitted to sucking on J.W.'s fingers and inappropriately fondling her for a period of approximately five minutes. Record, No. 11, Investigation Report, Defendant's Written Statement. Appellant was immediately placed into custody and charged with aggravated indecent assault,[4] indecent assault,[5] and corruption of a minor.[6] Record, No. 11, Arrest Report.

¶ 5 On January 7, 2002, appellant pled guilty to indecent assault and corruption of minors, and prior to sentencing, the Commonwealth petitioned the court to determine whether appellant should be classified as an SVP. N.T., 1/7/02, at 6. On May 6, 2002, the court sentenced appellant to one and a half to three years imprisonment plus a consecutive term of five years probation, the court noting on the record that appellant recently had been convicted and incarcerated, and was currently on parole and being treated for repeatedly sexually assaulting his eight-year-old niece over a three year period. N.T., 5/6/02, at 10, 17–19; *accord, N.T.,* 5/25/05, at 39–40.

¶ 6 As explained above, the Commonwealth's petition for a hearing to determine whether appellant was an SVP was denied on the basis of a previous decision that the registration, notification, and counseling requirements of Megan's Law were unconstitutional. *Commonwealth v. Bannigan,* 60 Pa. D. & C. 4th 55, 81 (Bucks Cty.2001). Thereafter, however, the Pennsylvania Supreme Court determined those provisions of Megan's Law were constitutional and, hence, a hearing was scheduled on the Commonwealth's petition. *See Commonwealth v. Gomer Robert Williams,* 574 Pa. 487, 832 A.2d 962, 986 (2003) (*Williams II.*)

¶ 7 On August 8, 2005, the trial court issued an Order designating appellant as an SVP and contemporaneously issued an Opinion outlining its rationale for doing so. Post-sentence motions were filed leveling constitutional challenges to Megan's Law II and averring the Commonwealth had not provided sufficient evidence to sustain the trial court's determination that appellant was an SVP. Record, No. 42. After a hearing, the court denied the motions by Order of December 16, 2005. Record, No. 47. The trial court then issued a second Opinion in the matter incorporating its first Opinion and its adjudication in *Commonwealth v. Mullins,* 70 Pa. D. & C.4th 462 (Bucks Cty.2005), *affirmed* 905 A.2d 1009 (Pa.Super.2006). Consequently, appellant perfected a timely appeal with this Court.

¶ 8 On appeal, appellant raises the following three issues for our review:

  A. Does a lack of judicial reviewability of [a] sexually violent predator find-

4. 18 Pa.C.S.A. § 3125(a)(7).

5. *Id.* at § 3126(a)(7).

6. *Id.* at § 6301(a)(1).

ing render Pennsylvania's Megan's Law II unconstitutionally overbroad and excessive?

B. Is Megan's Law II unconstitutionally vague?

C. Did the trial court err in finding that the Commonwealth established by clear and convincing evidence that appellant meets the statutory criteria for classification as a sexually violent predator?

Appellant's brief at 5.[7]

¶ 9 At the outset, we note that our standard of review when considering appellant's constitutional challenges is plenary, as these challenges involve pure questions of law. *See, e.g., Wilson v. Transp. Ins. Co.,* 889 A.2d 563, 568 (Pa.Super.2005), *citing Amerikohl Mining Co. v. Peoples Natural Gas Co.,* 2004 PA Super 388, 860 A.2d 547, 549–550 (Pa.Super.2004) (additional citations omitted).

¶ 10 Megan's Law I was enacted in 1995 with the stated purpose of protecting the safety and welfare of people of the Commonwealth by mandating sexually violent predators register with the proper authorities and that this registration be disseminated to the community. *See* 42 Pa.C.S.A. § 9791(b), **Legislative findings and declaration of policy.** In effectuating this purpose, Megan's Law I contained provisions requiring sexually violent predators to register their whereabouts for life and submit to counseling. 42 Pa.C.S.A. § 9795.1(b)(3), **Registration.** As previously mentioned, our state Supreme Court has determined these requirements of Megan's Law are non-punitive and constitutional and, consequently, these requirements have survived the subsequent enactment of Megan's Law II and III. *See Williams II, supra* at 986.[8] In making this determination, however, the Supreme Court noted the following:

> Still, one of the most troubling aspects of the statute is that the period of registration, notification, and counseling lasts for the sexually violent predator's entire lifetime. A reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means for a sexually violent predator to invoke judicial review in an effort to demonstrate that he no longer poses a substantial risk to the community. This aspect of the statute may be particularly problematic if the definition of "sexually violent predator" is incapable of reasonably precise implementation, as explained below. *Notably, however, the position that a means for subsequent judicial review is a necessary feature of any valid registration/notification scheme assumes that, given sufficient time and/or treatment, sexually violent predators can be fully cured of the "mental ab-*

---

7. These issues are identical to those presented to this Court in *Commonwealth v. Mullins,* 905 A.2d 1009 (Pa.Super.2006). Our Opinion in *Mullins,* rejecting the constitutional challenges to Megan's Law II and affirming the judgment of sentence, was filed on August 10, 2006.

8. Megan's Law II was passed in 2002 in response to our Supreme Court's decision in *Commonwealth v. Donald Francis Williams,* 557 Pa. 285, 733 A.2d 593 (1999) (*Williams I,*) wherein the Court concluded certain provisions of Megan's Law I were, indeed, unconstitutional.

Megan's Law I contained a provision permitting judicial review over a sexually violent predator determination no sooner than one year after release from provision or in five-year intervals thereafter. 42 Pa.C.S.A. § 9794(f), *repealed,* P.L. 74, No. 18, § 3 (May 20, 2000). Although this provision was not at issue in *Williams I,* the legislature nevertheless deemed it prudent to delete the review provision from Megan's Law II.

*normality or personality disorder [making them] likely to engage in predatory sexually violent offenses."* Williams II, supra at 982–983, citing 42 Pa.C.S.A. § 9792 (emphasis added).

¶ 11 Seizing on this language, appellant initially contends that Megan's Law II is unconstitutionally excessive because it fails to provide for subsequent judicial reconsideration of a trial court's finding that a defendant should be deemed an SVP. In doing so, appellant contends the experts agree that the rate of recidivism for pedophiles decreases with age, that treatment reduces the risk of recidivism, and that a pedophile can be "managed" so that the threat of risk to the community is diminished.

¶ 12 In analyzing appellant's constitutional challenges, we note the following:

> A statute will be found unconstitutional only if it clearly, palpably, and plainly violates constitutional rights. Under well-settled principles of law, there is a strong presumption that

legislative enactments do not violate the constitution. Further, there is a heavy burden of persuasion upon one who questions the constitutionality of an Act.

*Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384, 388 (2000) (internal quotation marks and citations omitted).

¶ 13 In addressing appellant's first constitutional challenge, we must first determine whether he has overcome the strong presumption of constitutionality by presenting evidence that pedophilia can be "fully cured." *See Williams II, supra* at 982–983. Without establishing such a "cure" is available, the need for judicial review of the determination that a defendant is an SVP is clearly obviated.[9] Furthermore, we feel it is equitable to apply a heightened standard of review as appellant is seeking review so that he does not have to comply with the Megan's Law II registration and notification requirements, which our Supreme Court has held to be non-punitive and non-onerous in nature. *See Williams II, supra* at 986.

**9.** The trial court noted in *Mullins, supra,* which is incorporated into its Rule 1925(a) Opinion, that in order for a defendant to successfully challenge the constitutionality of Megan's Law for the lack of review over a sexually violent predator determination he must show he no longer remains a "substantial risk to the community" by pointing to the passage in *Commonwealth v. Gomer Robert Williams,* 574 Pa. 487, 832 A.2d 962, 986 (2003) (*Williams II*) set forth *supra.* We disagree with this analysis. As the passage demonstrates, our Supreme Court stated unequivocally that judicial review would only be necessary if a cure for pedophilia (or any other "mental abnormality or personality disorder" outlined in Megan's Law) could be demonstrated, i.e., review is only necessary if it is assumed pedophilia can be cured. Only after the *need* for judicial review is established would the sexually violent predator be given the opportunity to demonstrate they no longer pose a "substantial risk to the community." The inherent and apt assumption in

the Court's statement is that pedophilia is always a risk to the community—even if there is only a .0001% chance a pedophile will recidivate. If the condition cannot be cured, it is logically impossible for appellant to demonstrate he no longer poses a risk to the community and, consequently, there is no reason for applying a more lenient standard of review.

Even if we were to accept the trial court's notion of what the burden of proof should be, appellant has presented us with no evidence demonstrating he no longer is a risk to the community. As mentioned above, appellant argues that the progression of age reduces the risk of pedophilia, yet appellant is in his late twenties. He also argues treatment reduces the risk of recidivism, yet appellant committed the assault on J.W. while he was undergoing treatment. Thus, even assuming *arguendo* appellant's contentions are apt, appellant still has failed to demonstrate these mitigating factors have any application to his situation.

¶ 14 The medical evidence of record demonstrates appellant has been diagnosed with pedophilia, and the condition cannot be cured. Record, No. 13, Petition for Hearing to Determine Defendant's Sexual Offender Classification, Attachment A. An expert from the Sexual Offenders Assessment Board testified:

> There's no cure for pedophilia. It cannot be controlled by any means except internal resources and they have a lifetime course. That's why someone who is considered to be a sexually violent predator is in lifetime treatment.

N.T., 5/25/05, at 64–65.[10]

■ ¶ 15 Appellant himself admits: "The experts agree that there is no cure for pedophilia." Appellant's brief at 26. Inasmuch as we are constrained by the language of our Supreme Court in this matter, we find appellant has failed to demonstrate a cure exists for pedophilia, thereby giving rise to the *need* for judicial review over a court's determination that a defendant is an SVP. Consequently, we conclude appellant's first constitutional challenge fails. *See also Commonwealth v. Haughwout*, 837 A.2d 480, 489 (Pa.Super.2003) (dismissing an appellant's due process challenge to the lack of judicial review over a sexually violent predator determination because the record was wholly void of any evidence demonstrating a cure was available for the unspecified "mental abnormality or personality disorder" the appellant was influenced by).

¶ 16 Turning to appellant's "void for vagueness" challenge, appellant advances two arguments. First, he argues the term "sexually violent predator" is too vague and the words and phrases "personality disorder," "mental abnormality," "predatory," and "likely," used to define this term in Megan's Law II, are so vague they give "fact finders unfettered leeway to make arbitrary decisions when categorizing an accused as a sexually violent predator." Appellant's brief at 35. Inasmuch as this Court has already determined the term "sexually violent predator" and the lesser included words and phrases contained therein are not unconstitutionally vague, we will not address the issue anew. *Commonwealth v. Mullins*, 905 A.2d 1009 (Pa.Super.2006), *citing Commonwealth v. Howe*, 842 A.2d 436, 445 (Pa.Super.2004) (holding the terms "sexually violent predator," "personality disorder," "mental abnormality," "predatory," and "likely" are not constitutionally vague); *Commonwealth v. Kopicz*, 840 A.2d 342, 348 (Pa.Super.2003) (concluding the term "sexually violent predator" is not unconstitutionally vague); and *Commonwealth v. Rhoads*, 836 A.2d 159, 162–163 (Pa.Super.2003).

¶ 17 Appellant's second argument with regard to this issue is predicated on the following passage in *Williams II, supra.*

> As Appellees' void for vagueness challenge was not addressed by the trial court, and the matter will be remanded for consideration of this claim, any imprecision in the Act's provisions must presently be evaluated in terms of whether it renders the statute unconstitutionally punitive through ex-

---

**10.** The expert also diagnosed appellant with antisocial personality disorder and impulse control disorder. N.T., 5.25.05, at 65. The expert noted antisocial personality disorder "may become less evident or remit as the individual grows older ...", but he did not state the disorder could be cured. *Id.* at 103. The expert expressed no opinion as to wheth- er impulse control disorder could be cured. He further noted, impulse control disorder in of itself does not predispose an individual to the commission of sex crimes. *Id.* at 102. In summary, appellant's failure to present evidence that these secondary conditions are curable does not help him in the matter *sub judice.*

cessiveness. Primarily, if the Act's imprecision is likely to result in individuals being deemed sexually violent predators who in fact do not pose the type of risk to the community that the General Assembly sought to guard against, then the Act's provisions could be demonstrated to be excessive in relation to the remedial purposes served ... Appellees could establish that the offender assessment is so unreliable that there will be little correlation between those ultimately deemed sexually violent predators and the class of individuals who pose the greatest risk of predation ... *[A]ny conclusion that an assessment of sexually violent predator status is so arbitrary that the consequences to the individual so adjudicated constitute punishment, would have to be grounded upon credible record evidence that the enumerated criteria were non-predictive, or that assessment pursuant to them was inherently unreliable.*

*Id.* at 983–984 (emphasis added).

¶ 18 As in *Mullins, supra,* appellant herein avers the enumerated criterion used to determine whether an accused is an SVP are non-predictive. *See* 42 Pa. C.S.A. § 9795.4(b), **Assessments.** Appellant does not aver that the assessment pursuant to these factors is inherently unreliable. In determining whether the Megan's Law II factors are unconstitutional, we are mindful of the heavy presumption that Megan's Law II is constitutional. *See MacPherson, supra* at 388. We are also mindful of the above passage where our Supreme Court explicitly stated that any finding that the factors contained in 42 Pa.C.S.A. § 9795.4(b) are unconstitutional must be premised upon, "credible record evidence that the enumerated criteria [are] non-predictive." *Williams II, supra* at 984.

¶ 19 In arguing the enumerated criteria of 42 Pa.C.S.A. § 9795.4 are non-predictive, appellant relies solely on the same expert testimony as presented in *Mullins, supra.* N.T. 9/28/04;[11] Appellant's brief at 28–32.[12] Appellant attacks the Megan's Law II assessment criteria by arguing the Sexual Offender Assessment Board (SOAB) conducts its assessments at the least logical time, i.e., *before* an offender is incarcerated, and that the assessment itself is not properly aimed at "risk assessment." He further argues the SOAB should be required to use actuarial instruments in arriving at its assessments and by arguing the factors are incomplete because they do not require the SOAB to interview an offender before making a determination. Appellant's brief at 29–30.

■ ¶ 20 Appellant's arguments fail on a number of levels. First and foremost, appellant's argument that assessment should be conducted upon release, rather than prior to sentencing, is inapposite in light of the fact that pedophilia cannot be cured. The SOAB's function is to determine if an incurable and real risk exists, not to determine when the risk may have lessened a bit. Secondly, appellant's argument that the assessment should be geared more towards quantifying "risk assessment" is wholly without merit as "risk assessment" is a clinical term used to de-

11. The transcript of the September 28, 2004 hearing, relied upon by both parties and the trial court, is contained in the certified record in *Mullins, supra.* It was made available to the panel assigned to this appeal.

12. We note that appellant's argument on this issue is identical to that presented in appellant's brief in *Mullins, supra.* Although we reach the same conclusion as the *Mullins* Court, we have chosen to address the issue with a somewhat different approach.

termine what percentage of people in a certain demographic is inclined to the specific type of behavior being studied, the method does not determine whether a particular offender himself is likely to engage in the behavior. N.T., 9/28/04, at 203. Third, appellant's suggestions for improving assessments have little import on the issue of whether the assessment factors themselves have any predictive value. Finally, the expert on whom appellant relies—Dr. Timothy Foley—testified that the use of actuary tables would only lead to a small improvement over currently used methods and that he himself had diagnosed patients as pedophiles without personally interviewing them. N.T., at 156–160. Such evidence does not come near demonstrating that the Megan's Law II assessment factors are "non-predictive." *See Williams II, supra* at 984. Consequently, appellant's void for vagueness challenge fails and as in *Mullins,* we conclude the Megan's Law II assessment factors are constitutional.

■ ¶ 21 Having determined the Megan's Law II assessment factors are constitutional, we now review the trial court's finding that appellant is an SVP. Our standard of review is as follows:

> The determination of a defendant's SVP status may only be made after an assessment and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the factfinder found clear and convincing evidence that the individual is a sexually violent predator. Our review of a sufficiency of the evidence claim is plenary. As with any sufficiency claim, we view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Com-

monwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.

*Commonwealth v. Dengler,* 843 A.2d 1241, 1246 (Pa.Super.2004) (internal citations and quotation marks omitted).

¶ 22 The term "sexually violent predator" is defined, in relevant part, as:

> A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792, **Definitions.**

¶ 23 There is no dispute that appellant pled guilty to and was convicted of a sexually violent offense. *See* 42 Pa.C.S.A. § 9795.1(b)(2) (providing that defendants convicted of indecent assault under 18 Pa. C.S.A. § 3125 will be subject to lifetime registration). There is also no dispute appellant has been diagnosed with pedophilia—a mental abnormality in the most decisive sense of the term. The only remaining question, therefore, is whether the trial court erred in finding that the SOAB properly applied the assessment factors in concluding appellant is an SVP. After careful review, we discern no error in this regard.

¶ 24 The trial court is required to examine a list of statutory factors in determining whether a defendant is an SVP. *See* 42 Pa.C.S.A. § 9795.4. These factors are arranged under four general headings—facts of the current offense, prior offense history, characteristics of the individual, and factors that are supported in a sexual of-

fender assessment field as criteria reasonably related to the risk of reoffense. *Id.* In finding appellant is an SVP, the trial court placed great emphasis on a number of salient facts. Under the heading of the facts of the current offense, the trial court noted appellant carefully cultivated a relationship with J.W.'s father to gain entry into the family home and then became close enough with J.W. whereby she permitted him to sleep with her on the couch. The court also credited testimony from an expert stating appellant has developed an age preference for young girls, as evinced by his assaults on an eight-year-old and a ten-year-old. Trial Court Opinion, Goldberg, J., 8/8/05, at 13–14. Under the heading of prior offense history, the trial court emphasized the fact that appellant had been convicted of assaulting two young girls in a three year span and was on probation and undergoing counseling when he committed the underlying offense. *Id.* at 14. Finally, as to individual's characteristics, the trial court noted appellant had been diagnosed with incurable pedophilia and that he had carefully planned the assault on J.W. *Id.* at 14–15.

¶ 25 We conclude the trial court relied on overwhelming evidence in finding appellant to be an SVP. The evidence establishes appellant repeatedly committed sexual assaults upon two young girls. Additionally, normal restraints imposed by society have no affect on appellant's desire to exert his deviant and degenerate sexual appetite. Appellant assaulted J.W. even though he was under probationary supervision for a previous assault of a young female. Apparently counseling had done nothing to mitigate the effects of appellant's incurable condition.

¶ 26 We find the Commonwealth clearly and convincingly established appellant is a pedophile and repeat offender who is unappreciative of society's attempts to rehabilitate him and who is eager to shed these perceived shackles by attacking other young children. *See Dengler, supra* at 1246. Inasmuch as Megan's Law II does not violate the constitutional rights of sexually violent predators, we have no hesitancy in finding the trial court was correct in determining appellant should be required to adhere to Megan's Law II, the requirements of which include local registration and notification for the rest of his natural life.

¶ 27 Judgment of sentence affirmed.