J-S07027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH L. YORTY, | |
| Appellant | No. 711 MDA 2014 |

Appeal from the Judgment of Sentence of April 8, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0002319-2012

BEFORE: BENDER, P.J.E., OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.: **FILED MARCH 06, 2015**

Appellant, Kenneth Lee Yorty, appeals from the judgment of sentence entered on April 8, 2014. We affirm.

The factual background of this case is as follows. Appellant sexually abused Victim 1, his step-granddaughter, from the time she was four years old until she was approximately 12 years old. He also sexually abused Victim 2, his great-granddaughter, from the time she was 7 years old until she was approximately nine years old. This sexual abuse included forcing Victim 1 to give Appellant "hand jobs" and forcing Victim 1 to engage in oral sex. Appellant ejaculated into Victim 1's mouth during one of the assaults. Appellant played "games" with the two victims while abusing them. For example, he played a game in which he touched Victim 1's bare vagina and penetrated her vagina with his fingers. He also told Victim 1 inappropriate

sexual stories. These abuses took place while Appellant was watching Victim 1 and Victim 2.

The procedural history of this case is as follows. On November 1, 2012, Appellant was charged via criminal information with 19 offenses related to his sexual abuse of Victims 1 and 2. On September 9, 2013, Appellant pled *nolo contendre* to involuntary deviate sexual intercourse – victim under 13 years old,[1] corruption of minors,[2] and indecent assault – victim under 13 years old.[3] On December 4, 2013, the Commonwealth filed a praecipe for a sexually violent predator ("SVP") hearing. The SVP hearing was held on April 1, 2014. Robert M. Stein, Ph.D., a member of the Sexual Offenders Assessment Board ("SOAB") testified at the SVP hearing on behalf of the Commonwealth and Appellant testified on his own behalf. On April 2, 2014, the trial court declared Appellant to be an SVP. On April 8, 2014, the trial court sentenced Appellant to an aggregate term of 6 to 15 years' imprisonment. This timely appeal followed.[4]

Appellant presents one issue for our review:

---

[1] 18 Pa.C.S.A. § 3123(a)(6).

[2] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[3] 18 Pa.C.S.A. § 3126(a)(7).

[4] On April 29, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On May 15, 2014, Appellant filed his concise statement. On June 23, 2014, the trial court issued its Rule 1925(a) opinion. Appellant's lone issue on appeal was included in his concise statement.

Did the trial court err when finding the Commonwealth presented clear and convincing evidence that [Appellant] meets the statutory requirements for classification as a[n SVP]?

Appellant's Brief at 8 (complete capitalization removed).

Appellant challenges the sufficiency of the evidence relating to the trial court's SVP designation. Our standard and scope of review is well-settled:

In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

***Commonwealth v. Baker***, 24 A.3d 1006, 1033 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013) (citation omitted).

This Court has explained the SVP determination process as follows:

After a person has been convicted of an offense listed in [42 Pa.C.S.A. § 9799.14], the trial [court] then orders an assessment to be done by the [SOAB] to help determine if that person should be classified as a[n SVP. An SVP] is defined as a person who has been convicted of a sexually violent offense . . . and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. . . . Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-

offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

***Commonwealth v. Stephens***, 74 A.3d 1034, 1038–1039 (Pa. Super. 2013) (internal quotation marks, ellipsis, and citations omitted).

When performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending. ***See*** 42 Pa.C.S.A. § 9799.24(b).

Appellant only contests one aspect of the trial court's SVP determination. Specifically, he contends that his conduct was not predatory, as is required for an SVP determination. Predatory conduct is defined as "[a]n act directed at a stranger or at a person with whom a relationship has

been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S.A. § 9799.12. Appellant argues that because he did not seek out relationships with Victim 1 or Victim 2 for the purposes of abusing them, his conduct was not predatory.

Appellant's argument is flawed because it focuses on a single element of the disjunctive list in the definition of predatory. It is well-settled that when interpreting a statute, the General Assembly's use of the disjunctive "or" ordinarily means that only one of the list's elements needs to be satisfied. *See Kelly v. Thackray Crane Rental, Inc.*, 874 A.2d 649, 656 (Pa. Super. 2005), *appeal denied*, 891 A.2d 733 (Pa. 2005). Thus, in order for Appellant's actions to be predatory the Commonwealth was only required to prove that Appellant established, maintained, **or** promoted his relationship with either Victim 1 **or** Victim 2 to facilitate **or** support victimization.

Dr. Stein testified that Appellant

used various games and sexual stories to groom [Victim 1] for continued sexual contact.

Grooming has to do with any set of behaviors designed to break down a child's natural defenses and make it easier to commit sexual assaults. Multiple acts of sexual assault of both of these young girls served to establish with the first act, and then maintain and promote with continued acts, sexually victimizing relationships. There is sufficient evidence for predatory behavior as defined by the statute.

N.T., 4/1/14, at 16.

- 5 -

Appellant argues that the games he played with Victim 1 were not sexual in nature, with one exception (the guessing game in which Appellant touched Victim 1's bare vagina). He argues that his testimony at the SVP hearing proved that he did not intend for that game to turn sexual. This argument, however, views the evidence in the light most favorable to Appellant. As noted, our standard of review when examining an SVP determination requires us to view the evidence in the light most favorable to the Commonwealth. In this case, the trial court did not credit Appellant's testimony at the SVP hearing. We may not overturn such a credibility determination. The same is true for Appellant's contention that his sexually inappropriate stories were requested by Victim 1. The trial court did not credit Appellant's testimony. We must defer to the trial court's credibility determination and conclude that Appellant's testimony regarding the games and stories was not credible.

We next turn to whether the games and stories provided sufficient evidence to conclude that Appellant's actions were predatory. Appellant relies primarily on *Commonwealth v. Plucinski*, 868 A.2d 20 (Pa. Super. 2005), in support of his argument that his conduct was not predatory. *Plucinski* is distinguishable for two reasons. First, this Court has since noted that our "Supreme Court in [*Commonwealth v. Meals*, 912 A.2d 213 (Pa. 2006)] disapproved this Court's re-weighing of the [statutory] factors [as this Court did in *Plucinski*]." *Commonwealth v. Morgan*, 16 A.3d

1165, 1173 (Pa. Super. 2011), *appeal denied*, 38 A.3d 824 (Pa. 2012). Second, in ***Plucinski***, the Commonwealth's own expert witness "call[ed] into question the identification of hebephilia as the primary impetus for [Plucinski's] behavior." ***Plucinski***, 868 A.2d at 27 (internal quotation marks omitted). Thus, there was no evidence favorable to the Commonwealth for this Court to review. On the other hand, in the case at bar Dr. Stein testified that the impetus for Appellant's behavior was his pedophilia.

We agree with Appellant that this case is distinguishable from ***Meals***. In ***Meals***, our Supreme Court found that Meals' "maintaining a relationship with the mother for the apparent purpose of sexually exploiting her children" was sufficient evidence to conclude that Meals' conduct was predatory. ***Meals***, 912 A.2d at 223. There is no evidence to suggest that Appellant maintained his relationship with his wife, or the victims' parents, for the purposes of having access to the victims. Again, we note however, that this is but one of a number of ways in which the Commonwealth could prove that Appellant's actions were predatory.

Appellant also attempts to distinguish ***Commonwealth v. Leddington***, 908 A.2d 328 (Pa. Super. 2006), *appeal denied*, 940 A.2d 363 (Pa. 2007). Appellant focuses on one of the two rationales given by this Court for determining that Leddington's conduct was predatory. Appellant correctly notes that, like in ***Meals***, this Court in ***Leddington*** determined

that the defendant's conduct was predatory because he cultivated a relationship with the victim's father in order to gain access to the victim. *Id.* at 336. There was, however, a second reason that this Court concluded that Leddington's actions were predatory. He had promoted his relationship with the victim "whereby she permitted him to sleep with her on the couch." *Id.* The same thing occurred in the case *sub judice* with Victim 1. Specifically, Appellant promoted his relationship with Victim 1 through the use of games and stories to the point where she felt comfortable enough to French kiss Appellant and to permit him to ejaculate in her mouth during oral sex.

Appellant also attempts to distinguish **Commonwealth v. Geiter**, 929 A.2d 648 (Pa. Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2007). **Geiter**, however, is remarkably similar to the case at bar. In **Geiter**, Dr. Stein, the same expert involved in this case, testified that the defendant's conduct was predatory because of "the use of pornography as a grooming behavior." **Id.** at 652. In the case at bar, Appellant used oral stories and games as grooming behavior instead of the viewing of pornography. There is no reason that the visual stimulation of a victim with pornography should be considered predatory while the aural stimulation of Victim 1 in this case should not be considered predatory. Instead, we conclude that the use of inappropriate sexual stimuli to promote a relationship with a victim is predatory in nature. That is exactly what occurred with Victim 1. Accordingly, we conclude that the Commonwealth proved by clear and

convincing evidence that Appellant's conduct was predatory because he promoted his relationship with Victim 1 to facilitate victimization. We thus turn to the broader 15 factor analysis conducted by Dr. Stein and the trial court.

As to the first factor, the offense involved multiple victims. As to the second factor, the trial court found that Appellant did not exceed the means necessary to achieve the offense. As to the third factor, the nature of the sexual conduct was digital penetration, "hand jobs", and oral sex. As to the fourth factor, the victims were Appellant's step-granddaughter and great-granddaughter. The trial court found that Appellant used those relationships to exploit their trust. As to the fifth factor, the victims were four and seven years old at the time the offenses began. As to the sixth factor, the trial court found that Appellant displayed unusual cruelty during the commission of the offense by ejaculating in Victim 1's mouth. As to the seventh factor, the trial court found that the victims were of normal mental capacity. As to the eighth, ninth, and tenth factors, Appellant had no prior criminal history.

As to the eleventh factor, Appellant was 60 years old at the time of the offense which, according to the trial court and Dr. Stein, made Appellant more likely to reoffend. As to the twelfth factor, there is no evidence that Appellant used illegal drugs. As to the thirteenth factor, the trial court found that Appellant suffered from a mental abnormality, *i.e.*, pedophilia. As to the fourteenth factor, the trial court found that Appellant groomed his

victims. As to the final factor, the trial court found no other circumstances relevant to the SVP inquiry.

In sum, we conclude that the trial court did not err as a matter of law nor did it abuse its discretion when it determined that the Commonwealth had proven, by clear and convincing evidence, that Appellant was a SVP. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/2015