**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Terrance MOODY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 10, 2003.

Filed Feb. 13, 2004.

---

Karl E. Rominger, Carlisle, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: KLEIN, BENDER, and OLSZEWSKI, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Terrance Moody (appellant/defendant) appeals from his sentence and determination as a sexually violent predator. Appellant pled guilty to various charges arising out of an incident involving the sexual abuse of his step-daughter and a neighboring child. The Court of Common Pleas of Dauphin County (Lewis, J.), sentenced appellant to a prison term of twelve to forty-four years and found appellant to be a sexually violent predator. Appellant is only challenging the determination that he is a sexually violent predator.

¶ 2 Upon release from prison, a sexually violent predator (SVP) is required to register his name and address with the State Police. 42 Pa.C.S.A. § 9796. In turn, authorities are required to release the SVP's name, address, photograph, criminal charges, and the fact that he is an SVP to various statutorily authorized persons and

organizations (such as the victim, neighbors, and schools). 42 Pa.C.S.A. §§ 9797—9798. These requirements make up what is commonly referred to as Megan's Law.

¶ 3 Appellant makes thirteen individual attacks on either his individual finding that he is an SVP or on the general constitutionality of Megan's Law. We find that none of appellant's arguments have any merit; therefore, we affirm the decision of the lower court.

¶ 4 Many of appellant's arguments involve constitutional attacks on Megan's Law. Appellant's arguments stem from his claim that the requirements of Megan's Law are punitive in nature. Recently, our Supreme Court held that the "registration, notification, and counseling provisions [of Megan's Law] constitute non-punitive, regulatory measures supporting a legitimate governmental purpose." *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 986 (2003). Therefore, appellant's constitutional claims that are criminal in nature[1] have no merit.

¶ 5 Appellant's claim number 6 (that Megan's Law is void for vagueness) also has no merit. *See Commonwealth v. Rhoads*, 836 A.2d 159, 162–63 (Pa.Super.2003) (Megan's Law is "sufficiently clear and specific" and is therefore not void for vagueness).

¶ 6 Additionally, the 11th claim asserted by appellant (that Megan's Law is in violation of the doctrine of separation of powers) has no merit. *See Rhoads*, 836 A.2d at 163 (Megan's Law does not offend the separation of powers doctrine because the law is substantive, not procedural).

¶ 7 Appellant's claim number 12 (that Megan's Law violates the legislative rule that no bill may contain more than one subject) equally has no merit. *See Rhoads*, 836 A.2d at 163 (Megan's Law does not offend the one-bill/one-subject requirement because all the laws passed in the bill containing Megan's law were germane to one general subject).

¶ 8 Appellant's other constitutional claims require brief discussion, but are all without merit.

¶ 9 In claim number 2, appellant argues that Megan's law violates his constitutional right to travel. The right to travel embraces three factors:

(1) "the right of a citizen of one State to enter and leave another State,

(2) "the right to be treated as a welcome visitor rather than an unfriendly alien, and

(3) "the right to be treated like citizens of that State."

*Wert v. Commonwealth*, 821 A.2d 182, 188 (Pa.Cmwlth.2003) (citing *Saenz v. Roe*, 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999)). Appellant argues that *should he choose to move to another state at a future point in time*, he would be subject to different reporting rules. First, we note that this argument clearly defeats the constitutional claim. Appellant argues that he would be treated like citizens of his new state, and that this is unfair because he was convicted in Pennsylvania. This argument goes against the very principle that appellant uses to argue his case.

¶ 10 Our research has revealed little case law on the subject. A recent Federal District Court opinion (for the Western

---

**1.** Claim number 5 (procedural due process: proof beyond a reasonable doubt, right to jury trial, and right to information or indictment); claim number 7 (cruel and unusual punishment and punishment for future dangerousness); and claim number 8 (double jeopardy). *See also Commonwealth v. Davis*, 708 A.2d 116, 120 (Pa.Super.1998) (SVP determination does not constitute double jeopardy because one is not "charged" as being an SVP).

District of Pennsylvania) has, however, addressed the reverse issue: a non-Pennsylvania SVP relocating to Pennsylvania. The Court found that the right to travel was not implicated because "as a general proposition, convicted persons . . . enjoy no fundamental right to travel." *Lines v. Wargo*, 271 F.Supp.2d 649, 661 (W.D.Pa. 2003). The Court also stated that if the SVP had a right to travel, the SVP must show (first) that he was subjected to disparate treatment, and (second) that there is a "compelling purpose justifying the disparate treatment and . . . [that] the classification is narrowly drawn to achieve that purpose." *Lines*, 271 F.Supp.2d at 662. For appellant to succeed on a right to travel claim, he must prove that he received different treatment in another state than did an SVP from that state. Because appellant has yet to relocate, this issue is not ripe for adjudication.

¶ 11 In claim number 9, appellant argues that Megan's Law violates the privilege against self-incrimination. The privilege against self-incrimination "does not extend to consequences of a noncriminal nature such as threats of liability in a civil suit, disgrace in the community or loss of employment." *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 778 (Pa.Cmwlth.1997) (quoting *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980)). Because Megan's Law is non-punitive, it is non-criminal, and therefore the privilege against self-incrimination does not apply to SVP assessments. *See also Commonwealth v. Kopicz*, 840 A.2d 342, 350 (Pa.Super.2003).

¶ 12 Appellant, in claim number 10, asserts that Megan's Law violates the privilege of confidential communications between a psychotherapist and a patient. He claims that any statements made by him to a psychotherapist are necessarily privileged, and cannot be introduced in court. While opinions, observations, and diagnosis are not protected by the privilege, *Commonwealth v. G.P.*, 765 A.2d 363 (Pa.Super.2000), statements made to a psychotherapist are protected by the privilege, so long as the statements were made "in the course of his professional services in behalf of such client." 42 Pa.C.S.A. § 5944.

> If the evaluations and summaries were not completed for treatment purposes, then Appellant's disclosures made therein would not be privileged under the psychiatrist/patient privilege. However, if the evaluations occurred during Appellant's rehabilitative treatment, and Appellant was not informed of his rights against self-incrimination and was not represented by counsel, then the disclosures were not properly available for consideration by the trial court in determining whether Appellant is a sexually violent predator.

*Commonwealth v. Carter*, 821 A.2d 601, 609 (Pa.Super.2003) (citation omitted).[2] Nancy Einsel, a member of the Sexual Offenders Assessment Board, did not evaluate appellant for the purpose of treatment, she evaluated him for the purpose of recommending to the court whether appellant should be deemed an SVP. Accordingly, the privilege does not apply.

¶ 13 In claim number 13, appellant argues that Megan's Law violates his constitutionally protected right to privacy.

**2.** The appellant in *Carter* was challenging statements made to a psychotherapist while he was in juvenile detention, and made prior the commission of the crimes at issue in the appeal. Therefore, there was an issue of whether the statements were made in violation of the appellant's right to counsel and his privilege against self-incrimination. There is no such issue in the instant case.

While there is no "right of privacy" found in any specific guarantee of the [federal] Constitution, the [U.S. Supreme] Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power.... [O]ur..."right of privacy" cases...deal generally with substantive aspects of the Fourteenth Amendment. In *Roe* [*v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)] the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty".... The activities detailed as being within this definition were...matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

*Paul v. Davis*, 424 U.S. 693, 712–13, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (citations omitted). Appellant claims that the notification provisions of Megan's Law violate this Constitutional right to privacy.

¶ 14 First, appellant has not identified any fundamental right that the notification provisions of Megan's Law intrude upon. Notification of an SVP's name, address, criminal history, and photograph do not deal with marriage, procreation, contraception, family relationships, child rearing, or education. Furthermore, public interest greatly outweighs the SVP's right to privacy.

Moreover, "[p]ersons found to have committed [the offenses set forth at § 9793(b)] have a reduced expectation of privacy because of the public's inter-

est in public safety and the effective operation of government." Registration requirements carry only a slight burden in comparison with other regulatory measures imposed by the Commonwealth. Balancing the unobtrusive registration provision of Megan's Law with the Commonwealth's compelling interest in public safety, we find the momentary inconvenience of disclosing the above-described information to police is greatly outweighed by the need to ensure public safety.

*Commonwealth v. Mountain*, 711 A.2d 473, 478 (Pa.Super.1998) (citations omitted). Therefore, appellant's right to privacy argument is without merit.

¶ 15 Appellant's claim number 4 (regarding a county intermediate punishment program) is not applicable to an SVP assessment. First, an SVP determination is non-punitive; therefore, cannot fall under a "county intermediate punishment program". Second, county intermediate punishment, codified at 42 Pa.C.S.A. §§ 9801–9812, provides statutory authority for alternate punishment programs, such as half-way houses and electronic monitoring. Finally, even if an SVP determination qualified as "intermediate punishment", appellant would not be an eligible offender because he was convicted of a number of offenses which are excluded from an intermediate punishment program.[3] Therefore, claim number 4 is quashed.

¶ 16 Appellant's remaining two claims rely on the specific set of facts presented in appellant's case. Claim number 1 argues that the Commonwealth failed to meet its burden of proving appellant is an SVP by clear and convincing evidence. Claim number 3 argues that the

---

3. The offenses that exclude appellant from an intermediate punishment program are: inde-

cent assault, rape, involuntary deviate sexual intercourse, and aggravated indecent assault.

lower court did not give adequate weight to appellant's rehabilitative disposition and that the sentence was based upon the SVP determination. We will discuss claim number 3 first.

¶ 17 We may consider an appeal on the discretionary aspects of a sentence "where it appears that there is a substantial question that the sentence imposed is not appropriate." 42 Pa.C.S.A. § 9781(b). Appellant argues that the lower court incorrectly weighed the various factors in determining his sentence. This does not raise a substantial question.

> Appellant does not argue that the sentencing court received incorrect information; he simply alleges that the lower court inappropriately applied that information when imposing sentence. Since this effectively requests us to substitute our judgment for that of the lower court in this regard, Appellant has failed to present us with a substantial question which will allow us to review the discretionary aspects of his sentence.

*Commonwealth v. Griffin,* 804 A.2d 1, 9 (Pa.Super.2002). We therefore decline to address appellant's claim that the lower court abused its discretion in sentencing appellant because appellant has not raised a substantial question for our review.

 ¶ 18 Finally, we address claim number 1: whether the Commonwealth satisfied its burden of proving appellant is an SVP by clear and convincing evidence. This is essentially an insufficiency of the evidence argument.

> The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the

evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented. At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. In most cases, we will determine whether the record supports the findings of fact made by the trial court and then review the legal conclusions made from them. However, in cases...where the trial court has stated its legal conclusions but has not provided specific findings of fact, we will review the entire record of the post-conviction SVP hearing as our scope of review is plenary. Therefore, if it appears based on all of the evidence viewed in a light most favorable to the Commonwealth that an SVP classification can not be made out in a clear and convincing manner, then we will be obligated to reverse the SVP designation.

*Commonwealth v. Krouse,* 799 A.2d 835, 837–38 (Pa.Super.2002) (citations and internal quotation marks omitted). Clear and convincing evidence means that

> witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*In re Fickert's Estate*, 461 Pa. 653, 337 A.2d 592, 594 (1975) (citations and internal quotation marks omitted). *See also Commonwealth v. Maldonado*, —— Pa. ——, 838 A.2d 710 (2003).

¶ 19 A sexually violent predator is defined as

A person who [1] has been convicted of a sexually violent offense...and [2] who is determined to be a sexually violent predator...due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792. There is no question that appellant has been convicted of sexually violent offenses, thereby satisfying part one of the definition. Appellant contests the lower court's finding that the Commonwealth satisfied part two of the definition.

¶ 20 Megan's Law sets forth a number of factors that must be considered when assessing a convicted sex offender for SVP status. These factors include: multiple victim offense, excessive force, nature of sexual contact, relationship to victim, age of the victim, unusual cruelty during the commission of the offense, mental capacity of the victim, prior criminal record and personal characteristics of the offender. 42 Pa.C.S.A. § 9795.4(b).

¶ 21 The court heard from Nancy Einsel, the assessment board member who evaluated appellant. She ultimately determined that appellant was an SVP. The lower court was satisfied with her explanation. Ms. Einsel testified that appellant groomed his victims. "He spent an extraordinary amount of time with the victim to the exclusion and disappointment of the victim's brother." N.T., 10/10/01, at 8. According to Ms. Einsel, appellant "showed extraordinary patience with moving her toward the sexual activity. It was something that was not spontaneous, it was clearly planned and manipulated." N.T., 10/10/01, at 11. Ms. Einsel concluded that appellant was not only a pedophile but was compulsive and had an addiction to sex.

¶ 22 The lower court was satisfied with the board member's assessment of appellant. "This court was satisfied that her second report as well as her testimony at the hearing more thoroughly detailed the predatory behavior of the appellant, especially with regard to the victimization and grooming of a second victim for those same purposes." Trial Court Opinion, 1/28/03, at 6.

¶ 23 Appellant cross-examined Ms. Einsel about her initial report where she indicated that appellant was not a predator. Additional information from the victim's family, however, ultimately changed Ms. Einsel's opinion. Also, appellant's own expert was unable to come to any definitive conclusion because, he too, would need to analyze the additional information Ms. Einsel relied upon in her amended report.

¶ 24 We conclude that the Commonwealth proved by clear and convincing evidence that appellant is a sexually violent predator. Accordingly, we affirm the determination of the lower court.

¶ 25 JUDGMENT OF SENTENCE AFFIRMED.