J-S78025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID RICHARD HAMMAKER | |
| Appellant | No. 849 MDA 2014 |

Appeal from the Order Entered May 1, 2014
In the Court of Common Pleas of Perry County
Criminal Division at No(s): CP-50-CR-0000258-2013

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 27, 2015**

Appellant David Richard Hammaker appeals from the order issued by the Perry County Court of Common Pleas finding Appellant was a sexually violent predator ("SVP") within the meaning of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.11, *et seq.*[1]  We affirm.

Appellant was charged with multiple offenses arising from the sexual assault of his son.  On January 9, 2014, he entered a *nolo contendere* plea

_____

[1] SORNA is also known as Megan's Law.  The trial court and parties cite 42 Pa.C.S. § 9791, *et seq.*, a prior version of SORNA.  Our legislature, however, amended SORNA, effective December 20, 2012, and repealed the prior statutory provisions.  This memorandum cites to the current version, which was in effect at the time of the May 1, 2014 SVP hearing and sentencing. The SVP provisions at issue in this decision did not substantially change from the prior version.

to one count of indecent assault.[2]  The Sexual Offenders Assessment Board

("SOAB") conducted an assessment of Appellant and issued a report

recommending that the trial court find Appellant to be an SVP.

On May 1, 2014, the trial court held an SVP hearing and a sentencing

hearing.  The court found Appellant was an SVP and sentenced him to 20 to

84 months' incarceration.  The court also found Appellant was subject to

SORNA's lifetime registration requirement.

On May 7, 2014, Appellant filed a timely notice of appeal.  Both

Appellant and the trial court complied with Pennsylvania Rule of Appellate

Procedure 1925.

Appellant raises the following issue on appeal:

> Whether the trial court's conclusion that Appellant is [an SVP] under Megan's Law is supported by sufficient evidence.

Appellant's Brief, at 3.

If a defendant is convicted of a sexually violent offense, a trial court

must order the SOAB to assess the defendant to determine whether to

classify him as an SVP.  42 Pa.C.S. § 9799.24(a)-(b).[3]  The SOAB then

prepares a report and submits it to the Commonwealth.  42 Pa.C.S. §

---

[2] 18 Pa.C.S. § 3126(a)(7).

[3] The trial court and parties cite 42 Pa.C.S. § 9795.4 as the provision governing assessments.  Effective December 20, 2012, however, § 9799.24 addresses SVP assessments.  Section 9795.4 was repealed.

9799.24(b), (d); *accord Commonwealth v. Feucht*, 955 A.2d 377, 380 (Pa.Super.2008). Upon praecipe from the Commonwealth, the court will conduct a hearing. 42 Pa.C.S. § 9799.24(e). At the hearing, the Commonwealth must prove the defendant is an SVP by clear and convincing evidence. 42 Pa.C.S. § 9799.24(e)(3); *accord*, *Feucht*, 955 A.2d at 380.

An SVP is an individual convicted of an enumerated offense "who . . . is determined to be [an SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. Indecent assault is an enumerated offense. 42 Pa.C.S. § 9799.12; 9799.14(d)(8).

SORNA discusses the factors the SOAB must consider in preparing an SVP assessment and provides:

> An assessment shall include, but not be limited to, an examination of the following:
>
> (1) Facts of the current offense, including:
>
> (i) Whether the offense involved multiple victims.
>
> (ii) Whether the individual exceeded the means necessary to achieve the offense.
>
> (iii) The nature of the sexual contact with the victim.
>
> (iv) Relationship of the individual to the victim.
>
> (v) Age of the victim.
>
> (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
>
> (vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b). The statute defines a mental abnormality as:

A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

42 Pa.C.S. § 9799.12.

There is no requirement that all factors "or any particular number of them be present or absent in order to support an SVP designation." *Feucht*, 955 A.2d at 381. "The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. Rather, the presence or absence of one or more factors might simply suggest the

presence or absence of one or more particular types of mental abnormalities." *Id.* (internal citations omitted). The court must determine whether the Commonwealth established that "the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses." *Id.*

On May 1, 2014, the court held an SVP hearing. At the SVP hearing, Dr. Robert Stein, a licensed psychologist and a member of the SOAB, testified. N.T., 5/1/2014, at 3. Dr. Stein stated Appellant chose not to be evaluated. He based his report on a review of the file, which included a report by the board investigator, an order from the court, a response from defense counsel, the criminal information and affidavit of probable cause, investigative reports, Children and Youth Services reports from this case and from an unfounded prior case, ChildLine reports, reports from the Dauphin County District Attorney's Office on two prior cases, adult probation records, child support information, and a pre-sentence investigation. *Id.* at 6-7.

Dr. Stein discussed each of the fifteen factors the SOAB must consider when preparing a report pursuant to 42 Pa.C.S. § 9799.24(b). He noted the offense involved only one victim and Appellant did not exceed the means necessary to achieve the offense. N.T., 5/1/2014, at 8. Dr. Stein found the nature of the sexual contact particularly relevant, noting that because the acts included "oral sex with a young boy, it would be consistent with a pedophilic disorder, a disorder that involves sexual interest and acts with a young child." *Id.* Dr. Stein noted the victim was Appellant's biological son,

which was consistent with sexual deviance, and noted the victim's age, 7, was consistent with pedophilic disorder. *Id.* Dr. Stein found there was unusual cruelty because Appellant forced the victim to consume semen, and the victim became sick. *Id.* Dr. Stein also noted the victim suffers from "some psychiatric conditions, at least some of which are possibly due to the abuse." *Id.*

Dr. Stein then noted that Appellant's prior offense history included a sex offense, which was consistent with a sustained period of sexual deviance, and noted there was a history of probation revocation. N.T., 5/1/2014, at 9. Dr. Stein did not have information suggesting Appellant received sex offender counseling. Dr. Stein noted Appellant was approximately 48 years old when the acts started, which was consistent with a sexual deviance disorder. *Id.*

Dr. Stein stated that Appellant did not use illegal drugs, his behavioral history was consistent with a disorder of sexual deviance, i.e., a pedophilic disorder, and Appellant had a possible alcohol abuse problem. N.T., 5/1/2014, at 9. Dr. Stein then stated that "having a prior sexual criminal history and having a male victim are all associated statistically with increased risk." *Id.*

Dr. Stein also discussed his findings. He first discussed whether Appellant suffered from a condition that was the impetus of the sexual offense. N.T., 5/1/2014, at 10. Dr. Stein found Appellant had a pedophilic disorder, and stated that "a disorder of this kind of sexual deviance is not a

curable condition, there were repeated sexual urges for this young boy that [Appellant] either would not or could not control; given this history, there is sufficient evidence that if given unsupervised access to children at some point in his life, there would be some form of sexual misconduct." N.T., 5/1/2014, 11-12. He noted there were "acts of oral sex to ejaculation with a young child. Even a single such act would make one strongly suspect a pedophilic disorder, that is sustained sexual interest in a young child." *Id.* He noted the victim was unable to specify a time frame,

> but he detailed multiple counts of getting sick from semen in his mouth. He talked about statements that were made to him that were grooming statements, statements having to do with drinking juice, meaning semen. While he stated acts occurred a thousand times, it's understood that this was a young boy saying this and that it was an exaggeration, but it is indicative of numerous occurrences even though we do not have an exact number.

*Id.*, at 10-11. Dr. Stein stated there was a past report involving an eight-year old girl, which did not result in a conviction, and a prior criminal conviction for sexual assault against Appellant's thirteen-year-old niece. *Id.,* at 11. He noted there were other allegations of sexual misconduct that the report did not rely upon but would be of concern in a clinical context. N.T., 5/1/2014, at 11. Dr. Stein concluded to a reasonable degree of medical certainty that pedophilic disorder was the impetus to the sexual offending. *Id.*, at 11-12.

Dr. Stein next opined as to whether the acts were predatory, which is "an act that is either directed at a stranger, or if it is a familiar person, if a

relationship has been promoted for victimization." N.T., 5/1/2014, at 12. Dr. Stein found Appellant groomed[4] the victim with verbal statements, including attempts to convince the victim that semen was "juice." *Id.* at 12-13. Dr. Stein noted repeated molestation "in this manner promotes a sexually victimizing relationship consistent with predatory behavior as the statute defines it." *Id.* at 13. Dr. Stein concluded that Appellant should be classified as an SVP. N.T., 5/1/2014, at 13.

Appellant's counsel cross-examined Dr. Stein. Dr. Stein stated that there was a "slight decrease" in the likelihood of recidivism as individuals age. N.T., 5/1/2014, 14-15. Dr. Stein agreed that, although there were other allegations of sexual abuse, Appellant had only one other sexual offense conviction, which involved a thirteen-year-old female. *Id.*, at 16-18. Further, Dr. Stein testified that, pursuant to the Diagnostic and Statistical Manual of Mental Disorders, 5th ed. ("DSM-V"), a diagnosis of pedophilic disorder requires six months or more of fantasies, urges, or behaviors involving a prepubescent child. *Id.* at 19. He testified, however, that "the time period acknowledged by the DSM-V is arbitrary and it is subject to the judgment of the individual reviewing the case." *Id.*, at 21. He opined that:

> [B]ased on the seriousness of the act, the seriousness of
> the grooming behavior, that there was some period of time

---

[4] Dr. Stein defined grooming as "anything that is done to a child to make it easier to break down that child's defenses for molestation." N.T., 5/1/2014, at 12.

over which such deviant sexual interest would have developed. We don't know the exact period of time. There [was] more . . . than one act in this case. The child's account suggests many acts, although I can't put a number on it. It is my clinical judgment that there has been a lengthy period of time over which such deviant sexual interest has been harbored by the Defendant, I can't put an exact figure on the number of weeks or months or years that he has had this interest.

*Id.* at 22.

The Commonwealth submitted Dr. Stein's report into evidence. N.T., 5/1/2014, at 27.[5]

The court entered the following findings on the record:

On January 9, 2014, following [Appellant's] nolo plea to the offense of indecent assault, this [c]ourt requested the [SOAB] to conduct an evaluation and assessment of [Appellant]. . . .

On May 1, 2014, this [c]ourt conducted a hearing per the Commonwealth's praecipe. At the hearing, Robert M. Stein, Ph.D., from the [SOAB], offered an opinion that [Appellant] should be certified as [an SVP]. This [c]ourt accepts that testimony as credible. The [c]ourt finds the Commonwealth has met its burden of proof by clear and convincing evidence that [Appellant] is [an SVP]; wherefore, the [c]ourt enters the following order: . . . and now, May 1, 2014, the [c]ourt finds on clear and convincing evidence that [Appellant] is [an SVP] within the meaning of 42 Pa.C.S.A §§ [9799.12], *et seq.*

As to the Megan's Law registration, the [c]ourt is entering the following findings of fact: number one, [Appellant] has been convicted of indecent assault, a sexually violent offense as defined in 42 Pa.C.S.A. § [9799.12]; number

_____

[5] Although admitted into evidence, the report is not contained in the original record.

two, the number of victims is one; number three, [Appellant] did not exceed the means necessary to achieve the offense; number four, the nature of the sexual conduct with the victim was oral sex; number five, the relationship of [Appellant] to the victim was that of biological father; number six, the age of the victim was between six and seven at the time of the offense; number seven, the offense did include a display of unusual cruelty by the individual during the commission of the crime; number eight, the mental capacity of [the victim],[6] [the victim's] mental capacity has been impacted by the acts performed upon him in that [the victim] has several mental illness diagnoses; number nine, [Appellant's] prior criminal record does include a crime of sexual assault being corruption of minors; number ten, [Appellant] has completed a prior sentence; however, a prior sentence was revoked due to a parole violation or probation violation, . . . ; number eleven, the [c]ourt has no knowledge as to whether or not the individual participated in available programs for sexual offenders; number twelve, at the time of the crime, [Appellant's] age was approximately 48 years old; number thirteen, [Appellant] did not use illegal drugs in the commission of the offenses; number fourteen, [Appellant] does have mental illness, disability or mental abnormality as stated by the [SOAB] report; number fifteen, behavioral characteristics that contribute to the individual's conduct, the Court believes that [Appellant] suffers from some form of alcohol abuse which may have contributed to his conduct, although there is no specific testimony as to whether or not drugs were used during the commission of the offense; . . .

After analysis of the above factors and recognizing the legal requirements that the Commonwealth must prove by clear and convincing evidence that [Appellant] is [an SVP], the [c]ourt reaches the following conclusions of law; number one, [Appellant] does suffer from a mental

---

[6] In referring to factor eight, the trial court referred to Appellant's mental capacity. The factor, however, refers to the victim's mental capacity and, at the conclusion of the hearing, the court clarified that it had referred to the victim, not Appellant, in its findings. N.T., 5/1/2014, at 35.

abnormality or personality disorder that makes him likely to engage in predatory sexual violent offenses; number two, [Appellant], therefore, is found to be [an SVP] within the meaning of Megan's Law.

N.T., 5/1/2014, at 32-35.

Appellant challenges the sufficiency of the evidence regarding the trial court's determination that he was an SVP. Appellant's Brief, at 3. He argues Dr. Stein's report and testimony did not constitute competent expert evidence and was inadmissible. Appellant's Brief, at 10-12. Appellant, therefore, claims the trial court's SVP determination was not supported by sufficient evidence.

When reviewing the sufficiency of the evidence of an SVP determination:

> [W]e will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. In most cases, we will determine whether the record supports the findings of fact made by the trial court and then review the legal conclusions made from them. However, in cases . . . where the trial court has stated its legal conclusions but has not provided specific findings of fact, we will review the entire record of the post-conviction SVP hearing as our scope of review is plenary.

***Commonwealth v. Moody***, 843 A.2d 402, 408 (Pa.Super.2004) (quoting ***Commonwealth v. Krouse***, 799 A.2d 835, 837-38(Pa.Super.2002)). We will reverse the designation if, "based on all of the evidence viewed in a light most favorable to the Commonwealth an SVP classification cannot be made

out in a clear and convincing manner." *Id.* (quoting *Krouse,* 799 A.2d at 837-38). Clear and convincing evidence means:

> [W]itnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Moody*, 843 A.2d at 408 (quoting *In re Fickert's Estate,* 337 A.2d 592, 594 (Pa.1975)).

Here, the Commonwealth relied upon the SOAB assessment report and the testimony of Dr. Stein to prove Appellant was an SVP. The sentencing court found Appellant was an SVP by clear and convincing evidence. We agree.

Contrary to Appellant's contention, Dr. Stein's opinions were not mere speculation and conjecture. Dr. Stein reviewed the statutory factors and discussed the evidence submitted to him. Although Dr. Stein stated the DSM-V provides that a diagnosis of pedophilic disorder requires a period of six months or more of fantasies, urges, or behaviors, he also stated that "the time period acknowledged by the DSM-V is arbitrary and it is subject to the judgment of the individual reviewing the case." N.T., 5/1/2014, at 21. He opined that:

> [B]ased on the seriousness of the act, the seriousness of the grooming behavior, that there was some period of time over which such deviant sexual interest would have developed. We don't know the exact period of time. There [was] more . . . than one act in this case. The

- 12 -

> child's account suggests many acts, although I can't put a number on it. It is my clinical judgment that there has been a lengthy period of time over which such deviant sexual interest has been harbored by the Defendant, I can't put an exact figure on the number of weeks or months or years that he has had this interest.

*Id.* at 22. Dr. Stein supported his conclusions with the evidence and stated that his conclusions were within a reasonable degree of medical certainty. Dr. Stein's testimony constituted competent evidence and the trial court properly adopted the findings.

The record, including the testimony of Dr. Stein, supports the trial court's factual findings and its legal conclusions. The court did not err in finding the Commonwealth established Appellant was an SVP.[7]

Order affirmed.

_____

[7] To the extent Appellant's brief challenges the weight of the evidence, the claim is waived and the argument fails. *Commonwealth v. Fuentes*, 991 A.2d 935, 944-45 (Pa.Super.2010) (finding the SOAB assessment report constituted evidence and any challenges thereto affect the weight, not the sufficiency, of the evidence). Appellant waived the claim when he failed to raise it in a post-sentence motion. *Commonwealth v. Barnhart*, 933 A.2d 1061, 1066 (Pa.Super.2007) (finding appellant waived claim when not raised in motion for new trial or post-sentence motion). Further, the court's determination that Appellant was an SVP does not shock the conscience. *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa.2013) ("a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail") (quoting *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa.1994)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2015