J-S38019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER MATSINGER | : | |
| | : | |
| Appellant | : | No. 1071 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 8, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0008045-2019

BEFORE:   STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                          **FILED DECEMBER 05, 2024**

Christopher Matsinger ("Matsinger") appeals from the judgment of sentence imposed by the Montgomery County Court of Common Pleas ("trial court") following his guilty plea to one count of involuntary deviate sexual intercourse with a child, two counts of aggravated indecent assault of a child, and one count of endangering the welfare of a child.[1]  Matsinger's sole issue challenges the sufficiency of the evidence supporting the trial court's finding that he was a sexually violent predator ("SVP").  We affirm.[2]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3123(b), 3125(a)(8), 3804.

[2] We have amended the caption to reflect that Matsinger's appeal is from the underlying judgment of sentence as made final by the trial court's SVP
*(Footnote Continued Next Page)*

The basic facts underlying the plea are straightforward. Sometime in 2019, Matsinger informed his now ex-wife that he had sexually abused their biological daughter, Z.M., for almost a decade. Z.M. estimated in a police interview that Matsinger had abused her multiple times per week from the time she was six or seven years old up through her fifteenth birthday. His acts included digitally penetrating her vagina, Matsinger's performance of oral sex, and forcing Z.M. to perform oral sex.

The Commonwealth filed a criminal information charging Matsinger with dozens of crimes. Matsinger agreed to plead guilty to the above crimes in exchange for an aggregate sentence of twelve to twenty-five years of incarceration followed by a five-year period of probation.[3] On September 28, 2021, the trial court accepted the plea and immediately sentenced Matsinger to the agreed-upon sentence. The court also scheduled an assessment by the Sexual Offender Assessment Board ("SOAB") to determine if Matsinger is an SVP.

Following several postponements, the trial court held the SVP hearing on March 8, 2024. Each side presented an expert witness in the field of

_____

determination. **See Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa. Super. 2016) ("[W]here a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered.")

[3] Additionally, Matsinger stipulated that some of the offenses occurred on or after December 20, 2012, making Subchapter H of the Sexual Offender Registration and Notification Act applicable.

evaluating and assessing SVPs. *See* N.T., 3/8/2024, at 10-11 (stipulation to Commonwealth's expert), 32 (stipulation to Matsinger's expert). The Commonwealth's expert was Robert Stein, Ph.D., a psychologist who assessed Matsinger on behalf of the SOAB, opined to a reasonable degree of professional and scientific certainty that Matsinger has pedophilic disorder and that he abused Z.M. because of this mental abnormality. Matsinger's expert, Jennifer Weeks, Ph.D., an owner of an SOAB-approved outpatient treatment program for sexual offenders, opined to a reasonable degree of professional certainty that Matsinger was not an SVP.

The trial court found Dr. Stein to be credible, accepted his testimony, and determined that the Commonwealth met its burden. Trial Court Opinion, 5/31/2024, at 11 ("Dr. Stein testified credibly that, based on his consideration of the factors required by law, defendant suffers from a mental abnormality that makes it likely he will engage in sexually predatory offenses."). Matsinger timely appealed.

His sole issue on appeal asserts that the Commonwealth presented insufficient evidence to meet its burden that he was an SVP. Matsinger's Brief at 12. While acknowledging that Dr. Stein diagnosed him as a pedophile, Matsinger avers that this conclusion was based solely on the "long-term sexual interest" and the repeated history of "acting on such interests with his daughter." Matsinger's Brief at 14. He reasons that "under Dr. Stein's logic, all repeat incestuous sexual activity between an adult and child automatically

constitutes a SVP [sic]." *Id.* Matsinger also cites Dr. Weeks' conflicting testimony describing Matsinger as "not an actual pedophile [who] did not have a sexual interest in prepubescent children." *Id.* at 15. Matsinger alleges that this testimony undermines "the evidence presented by the Commonwealth's expert" and that the Commonwealth thus failed to prove that Matsinger was an SVP. *Id.* In his view, Dr. Weeks' testimony "was more nuanced, precise and should have given the [t]rial [c]ourt doubt regarding the … risk of reoffending." *Id.*

Whether the evidence was sufficient to support the SVP designation presents a question of law, for which our standard of review is de novo and scope of review plenary. *See Commonwealth v. Meals*, 912 A.2d 213, 218 (Pa. 2006); *Commonwealth v. Aumick*, 297 A.3d 770, 776 (Pa. Super. 2023) (en banc). The Commonwealth must present clear and convincing evidence, which "falls between the criminal beyond a reasonable doubt standard and the civil preponderance of the evidence standard." *Commonwealth v. Woeber*, 174 A.3d 1096, 1105 (Pa. Super. 2017). The evidence must be "so clear, direct, weighty, and convincing" that the factfinder arrived at the conclusion with a "clear conviction … of the truth of the precise facts" at issue. *Meals*, 912 A.2d at 219 (quoting *Commonwealth v. Maldonado*, 838 A.2d 710, 715 (Pa. 2003)). We view the evidence in the light most favorable to the Commonwealth as the party who prevailed, and

we draw all reasonable inferences in its favor.  ***Commonwealth v. Moody***, 843 A.2d 402, 408 (Pa. Super. 2004).

At the outset, we note that Matsinger's challenge is not to the sufficiency of the evidence to support the trial court's determination, but to the weight given to that evidence by the trial court.  As recited above, Matsinger assails the trial court's finding that the Commonwealth's expert was credible and its concomitant failure to credit the testimony of the expert he presented.  This is a textbook weight claim.  ***See Commonwealth v. Smyser***, 195 A.3d 912, 916 (Pa. Super. 2018) ("An argument that the finder of fact should have credited one witness's testimony over that of another goes to the weight of the evidence, not the sufficiency of the evidence."); ***see also Commonwealth v. Fuentes***, 991 A.2d 935, 945 (Pa. Super. 2010) (en banc) (during an SVP proceeding, a defendant is "free … to argue to the fact-finder that the Commonwealth's expert's conclusions should be discounted or ignored," but "such arguments would affect the weight, and not the sufficiency of the expert's evidence").  A challenge to the weight of the evidence must be preserved through a post-sentence motion.  ***See*** Pa.R.Crim.P. 607(A).  The record reflects that Matsinger failed to preserve the issue.  Moreover, a challenge to the weight of the evidence necessarily concedes evidentiary sufficiency.  ***See Commonwealth v. Miller***, 172 A.3d 632, 643 (Pa. Super. 2017) ("[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be

believed.") (citation omitted). Therefore, on these bases, the argument Matsinger raised before this Court is waived. To the extent his brief could be viewed as raising a challenge to the sufficiency of the evidence, it is meritless.

"The procedure for determining SVP status is statutorily mandated and well-defined." **Aumick**, 297 A.3d at 777. The first step is the presentence SOAB assessment. **Id.** In addition to following standards established by the SOAB, the assessor considers the following fifteen factors mandated by the General Assembly.

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b).

The SOAB then submits a written report containing its assessment to the district attorney, *id.* § 9799.24(d), who retains the option to seek a formal hearing before the trial court. *Id.* § 9799.24(e)(1). At that hearing, the trial court "shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator." *Id*. § 9799.24(e)(3).

The trial court's role is distinct from that of the SOAB in that it must determine whether the Commonwealth met its burden that the defendant is an SVP by clear and convincing evidence. *Aumick*, 297 A.3d at 778-79. The General Assembly defines "sexually violent predator" as an individual who "is determined to be a sexually violent predator … due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12.[4] "Mental abnormality" is

_____

[4] The offender must also be convicted of a "sexually violent offense," which is defined as the list of offenses graded by tier within 42 Pa.C.S. § 9799.14. Three of Matsinger's convictions qualify. The term "predatory" is defined as acts "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to
*(Footnote Continued Next Page)*

defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.*[5]

We now review the evidence presented to the trial court. Dr. Stein concluded that Matsinger meets the standard established by the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") for pedophilic disorder. He summarized the criteria as follows:

> An individual has to have sexual behaviors or interests in young children over a period of six months or more and acting on that interest to victimize the child. Not merely having an interest. An individual could have such interest and never act on it. But to get the diagnosis of pedophilic disorder it has to be acted upon. And it was in this case for a number of years.

N.T., 3/8/2024, at 20.

This diagnosis was described by reference to the fifteen statutory factors set forth in 9799.24(b). Of the first seven factors, concerning the nature of the sexual offenses, Dr. Stein deemed three relevant: the nature of the sexual contact with the victim; the relationship of the individual to the victim; and the age of the victim. N.T., 3/8/2024, at 15; *see* 42 Pa.C.S. § 9799.24(b)(1)(iii)-(v). The other four he found were not pertinent, as the

_____

facilitate or support victimization." 42 Pa.C.S. § 9799.12. Matsinger does not dispute that his acts were predatory.

[5] "Personality order" is not separately defined.

offense involved one victim, did not involve cruelty or excessive means, and Z.M. was of normal mental capacity.  N.T. 3/8/2024, at 15-16; *see* 42 Pa.C.S. § 9799.24(b)(1)(i),(ii),(vi),(vii).  Dr. Stein deemed the nature of the contact particularly relevant, as committing a "variety of penetrative and non-penetrative sexual acts" is "consistent with … pedophilic behavior or behavior that reflects a sexual interest in sexual behaviors with young children."  N.T., 3/8/2024, at 15; *see* 42 Pa.C.S. § 9799.24(b)(1)(iii).  The biological relationship between Matsinger and his daughter was "consistent with sexual deviance or incestuous interests," and the abuse starting at a young age was "consistent with a pedophilic disorder."  N.T., 3/8/2024, at 15.

Turning to the next set of factors, pertaining to the offender's characteristics, 42 Pa.C.S. § 9799.24(b)(3), Dr. Stein emphasized the age disparity between Matsinger and his daughter.  N.T., 3/8/2024, at 16; 42 Pa.C.S. § 9799.24(b)(3)(i).  There was a "roughly 30-year age difference" between them, which "is consistent with a pedophilic disorder." N.T., 3/8/2024, at 16.  Addressing the "behavioral characteristics" that contributed to the abuse, Dr. Stein cited Matsinger's "long[-]term sexual interest" in Z.M., noting that Z.M.'s interview indicated hundreds of assaults.  *Id.* at 17; *see* 42 Pa.C.S. § 9799.24(b)(3)(iv).[6]

---

[6] The remaining two factors under this heading, addressing the offender's use of illegal drugs or whether he had an existing mental illness, were not relevant. 42 Pa.C.S. § 9799.24(b)(3)(ii-iii).

The sole factor contained within subsection (b)(4), which is more or less a catchall provision, requires the assessor to consider "[f]actors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense." 42 Pa.C.S. § 9799.24(b)(4). Dr. Stein again cited the fact that the abuse consistently occurred over a long period of time, opining that "a sustained sexual interest in a young child is associated with increased risk" of recidivism. N.T., 3/8/2024, at 17. Dr. Stein also testified that Matsinger's pedophilia was the impetus for his crimes.[7] *Id.* at 23 (concluding that Matsinger "either could not or would not control urges to molest his young daughter").

Dr. Weeks agreed with Dr. Stein that Matsinger fit the DSM-5 criteria for pedophilic disorder. *Id.* at 37 ("So based on the DSM-5 diagnostic criteria for pedophilic disorder he does meet those criteria."). Dr. Weeks disagreed with Dr. Stein, however, as to whether Matsinger was himself a pedophile, and the associated question of whether that abnormality was "the impetus for the sexual offending." *Id.* at 43. Dr. Weeks, who, unlike Dr. Stein, was permitted to interview Matsinger, explained that she performed testing to

---

[7] The "[p]rior offense history" category did not apply as Matsinger had no prior record and had never participated in any sexual offender programs. *Id.* § 9799.24(b)(2)(i-iii).

measure his reaction time to various images.[8]  Based on those results, Dr. Weeks concluded that Matsinger "does not objectively test as having sexual interests in prepubescent children, which would be pedophilia itself." *Id.*  She concluded to a reasonable degree of professional certainty that pedophilia did not explain his predations.  *Id*. at 37.  She explained that "the majority of incest offenders are not pedophilic," and described this as a "classic incest case" in which Matsinger effectively substituted his biological child for the role of his wife.  *Id.* at 44-45.  Finally, Dr. Weeks opined that Matsinger was not likely to reoffend, citing actuarial assessments that the risk of reoffending significantly drops off with age.  *Id.* at 42.  Because Matsinger will be approximately sixty years old at his earliest eligible release date, Dr. Weeks believed Matsinger was not likely to recidivate.  *Id.*

We conclude that the evidence presented met the Commonwealth's burden.  Matsinger's attempt to limit the evidence supporting the SVP designation to Dr. Stein's testimony that an incestual relationship by itself establishes pedophilia misconstrues the record.  In context, Dr. Stein

_____

[8] Specifically, Dr. Weeks conducted an "ABEL screen, which is a visual reaction time test for sexual interest."  N.T., 3/8/2024, at 39.  According to Dr. Weeks, this testing was "important because when we are looking at paraphilic motivation to offend, or the mental abnormality of pedophilia, that is an objective screen of that measure as well."  *Id.*  The test subject "looks at images, non-pornographic images but images of men, women, boys and girls of various ages and races.  And they are asked to do various tasks on the computer while looking at these images."  *Id.*  The test measures the subject's sexual interests based on how long he or she looks at the images.

considered the incestual nature of the sexual conduct as one of many relevant factors. Dr. Stein relied on the various types of sexual activity, i.e., oral sex and digital penetration, in combination with Z.M.'s age, the biological relationship, and the lengthy history of abuse both in terms of chronological length and frequency, to support his diagnosis of pedophilic disorder.

In this respect, an expert's diagnosis is itself evidence. In **Meals**, a SOAB expert opined that Meals "had a mental abnormality or personality disorder, i.e., pedophilia, as evidenced by his sustained sexual attraction to the child victims and his acting upon that attraction." **Meals**, 912 A.2d at 215. This Court concluded that the SVP designation was not supported by sufficient evidence, as several of the fifteen statutory factors were either not present or did not support an SVP designation. We additionally determined that the expert's "'diagnosis of pedophilia' was problematic because it 'seems based entirely on the age of the victims'[.]" **Id.** at 223 (citation omitted).

The Supreme Court reversed, holding that these conclusions misapplied the standard of review. First, the Court observed that the statutory factors do not "operate as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification." **Id.** at 222. Turning to the expert's diagnosis, the **Meals** Court stressed that a supported diagnosis is substantive evidence.

> The majority's discounting of the finding of pedophilia is also troubling because it ignores [the] expert opinion—that, to a reasonable degree of professional certainty, [Meals] was a pedophile—**itself** was evidence. To the extent [Meals] felt that

- 12 -

the expert's "diagnosis" was not fully explained, did not square with accepted analyses of the disorder, or was simply erroneous, he certainly was free to introduce evidence to that effect and/or to argue to the factfinder that the Commonwealth's expert's conclusions should be discounted or ignored. But that argument would affect the weight, and not the sufficiency, of the expert's evidence.

*Id.* at 223–24 (footnote omitted; emphasis in the original).

Here, the trial court credited Dr. Stein's testimony in the aggregate, including his opinion, rendered to a reasonable degree of scientific certainty, that Matsinger has a pedophilic disorder. That diagnosis is itself competent evidence that Matsinger suffers from a mental abnormality. *See id.*; *see also Commonwealth v. Hollingshead*, 111 A.3d 186, 193 (Pa. Super. 2015) (holding that an expert's diagnosis of hebephilia, which is not recognized in the DSM-5, is sufficient to support a finding of mental abnormality). Moreover, Dr. Stein offered sufficient evidence to enable the trial court to conclude that this affliction explains why he abused his daughter. *Commonwealth. v. Geiter*, 929 A.2d 648, 651 (Pa. Super. 2007) ("The salient inquiry to be made by the trial court is the identification of the impetus behind the commission of the crime ….").

We acknowledge that, unlike the appellant in *Meals*, Matsinger offered expert testimony that contradicted Dr. Stein's diagnosis. To the extent that those challenges implicate the sufficiency of the evidence in terms of the validity of the diagnosis itself, we note that Dr. Weeks agreed that Matsinger's behavior fit the DSM-5 criteria for pedophilia. Thus, Matsinger's position

appears to be that, in the absence of direct proof of Matsinger's motivation, the trial court was required to accept Dr. Weeks' testimony. This conflicts with the applicable standard of review, which requires that we view the evidence in the light most favorable to the Commonwealth, with all inferences be drawn in favor of the Commonwealth, as the prevailing party. *See Moody*, 843 A.2d at 408. To that end, Dr. Stein's opinion and accompanying testimony, based on his review of the fifteen statutory factors, served to link his pedophilic disorder to the abuse, and the trial court was entitled to credit that testimony. We therefore conclude that the evidence was sufficient to establish that Matsinger has a mental abnormality, and that this abnormality caused his predatory behavior. *See Hollingshead*, 111 A.3d at 194 (rejecting claim that defendant's expert testimony proved she was not an SVP where trial court chose to believe the Commonwealth's expert over the defendant's expert, and this Court "may not disturb that credibility determination").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2024

- 14 -